JAMES F. JUMER, Plaintiff-Appellant, *v.* DAVID J. HENNEBERRY, Defendant-Appellee.

Third District   No. 77-537

Opinion filed July 6, 1978.

Tim Swain, of Swain, Johnson & Gard, of Peoria, for appellant.

R. Michael Henderson and Gery R. Gasick, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, James Jumer, commenced this action in the circuit court of Peoria County seeking to recover damages from defendant, David Henneberry, as a consequence of defendant's operation of his car. After a jury trial a verdict in favor of the plaintiff was returned for $5,000. Judgment was entered on the verdict, post-trial motions were denied and this appeal follows.

On July 30, 1973, plaintiff was a passenger in the back seat of a car operated by defendant. Robert Schmitt was also a passenger occupying the right side of the front seat. The car was going east on I-74 through Peoria and at about the Knoxville interchange the Henneberry car sideswiped another car also going east on I-74, the latter car being operated by Lois Muchovic. However, the Henneberry car did not stop, but proceeded east on I-74 for approximately one mile where at a point near the Monroe overpass it rear-ended another car. Both cars left the road and the Henneberry car flipped over and came to rest on its top on the embankment. As a result of this collision Jumer's head struck the rear part of the front seat and caused injuries to his face.

The jury returned a verdict of $5,000 in favor of the plaintiff and against the defendant. Before judgment was entered on the verdict, defendant moved that the jury award be credited with the medical payments which had already been advanced by the defendant to the plaintiff in the amount of $4,571.89. The plaintiff made no objection to such allowance so the verdict was reduced by the amount of such medical payments and judgment was then entered in the amount of $428.11.

On this appeal the plaintiff argues the trial court erred in denying his motion for a new trial because one, the award of damages is inadequate and contrary to the evidence and two, plaintiff was deprived of a fair trial because of trial errors which occurred during the trial. We affirm.

In support of his assertion the trial court denied him a fair trial, the plaintiff argues one, the court erred in refusing to permit witnesses to testify to the speed of the defendant's car; two, the court erred in permitting evidence of drinking to be introduced in the trial; three, the court erred in giving instructions tendered by defendant.

With respect to the plaintiff's contention the trial court improperly declined to permit evidence of the speed of defendant's vehicle, it appears that three witnesses were questioned about speed. They were Lois Muchovic, the driver of the car which was sideswiped, Harold Freeland, who was on the Knoxville entrance ramp and Robert Schmitt, the other passenger in defendant's car. During the examination of these witnesses, plaintiff's counsel made numerous efforts both to lay a foundation for the speed opinion testimony and to elicit opinions of speed of the defendant's car. The court sustained most of the defendant's objections based generally on improper foundation. However, in our opinion the questions were proper and the objections, although sustained, were addressed to the quality of the evidence rather than to the propriety of the question. For example, the operator of the car which was sideswiped by defendant's car concluded that she had only a fleeting glance of the car as and after it passed her proceeding on down the highway. That her estimate of speed might have been adversely affected by the short duration of time during which she observed the car is a matter of argument, but should not invalidate her opinion as a matter of law.

■■ In *O'Brien v. Walker*, 49 Ill. App. 3d 940, 949, 364 N.E.2d 533, 539, the court observed:

> "Speed is generally recognized as a subject about which a layman may express an opinion. [Citation.] A witness is competent to testify as to the rate of speed of a moving object if he is of ordinary intelligence and possessed an opportunity for observation. [Citation.] The duration of a witness's period of observation [citation] or the fact that the witness does not drive but only observes as a bystander [citation] goes to the weight rather than the admissibility of the evidence."

Within the foregoing rule, we believe the questions were sufficient to establish the competency of the witnesses to express opinions of speed and the trial court was not justified either in rejecting the foundation questions or opinions based thereon. We do not believe it would serve any useful purpose to discuss the testimony of each witness relating to speed because in our opinion the errors are harmless. The jury by its verdict established the liability of the defendant, the only issue to which speed was relevant and consequently, we do not see how the defendant was unfairly or prejudicially affected by the court's rulings.

Next plaintiff argues the defendant by improper cross-examination of the plaintiff interjected into the trial evidence of drinking and of the presence of alcohol.

Prior to the commencement of the trial, the plaintiff filed his motion in limine requesting an order excluding evidence of drinking by or

intoxication of either the plaintiff or defendant. The trial court denied the motion and in our opinion did so properly. At this stage of the proceedings the pleadings included a count seeking damages based on the alleged intoxication of the defendant. During the voir dire the trial judge read the charges of the complaint against the defendant, including the charge that he was driving while under the influence of an intoxicating beverage. The plaintiff had not withdrawn this allegation from his complaint and had made no effort to do so at the time of his testimony.

During the plaintiff's testimony in chief, he was questioned by his counsel only about the events which occurred after the three persons were in the car. On cross-examination defense counsel, over plaintiff's objection, elicited testimony about the purchase of alcoholic beverages by the plaintiff and the consumption of such beverages by all three. Plaintiff's counsel objected that such questions were beyond the scope of direct examination and therefore improper. The objections were overruled and defense counsel was permitted to elicit testimony concerning the purchase and consumption of alcohol. The count of the complaint charging wilful and wanton misconduct of the defendant because of his operation of the car while under the influence of intoxicating beverages continued in the case until the conference on jury instructions at which time the count was dismissed on defendant's motion without objection because of the absence of any evidence of the intoxication of the defendant.

■■ We believe that latitude may be appropriately permitted in the cross-examination of a plaintiff. (*D.I. Felsenthal Co. v. Northern Assurance Co.*, 284 Ill. 343, 120 N.E. 268.) Based on the posture of the case at the time of the testimony, cross-examination relating to the purchase and consumption of alcohol was both material and relevant. The issue of the defendant's alleged intoxication was introduced into the case by the plaintiff by his pleadings. The plaintiff in attempting to establish his own due care and freedom from culpable conduct where intoxication of the defendant was charged made appropriate the cross-examination about the plaintiff's own conduct regarding the purchase and consumption of alcohol.

It is true that neither the instructions nor the arguments of counsel alluded to the purchase or consumption of alcohol or the intoxication of any of the parties, but by that time the issue had been properly removed from the case. It well may have been that the testimony regarding drinking affected the jury's determination, but the plaintiff is not in a position to complain. By continuing to include claims based on the intoxication of the defendant, the plaintiff invited the question of drinking as it related to this issue.

The plaintiff also argues the trial court erred in giving two of the

defendant's instructions. The first related to the giving of IPI Civil No. 33.01 (2d ed. 1971), referring to the failure of the plaintiff to exercise ordinary care to secure medical treatment. The second instruction which the plaintiff contends was erroneously given is the instruction regarding the failure to use a seat belt. According to the record no objection was interposed to the seat belt instruction although objection was timely made regarding the medical attention instruction. However, as has been pointed out by the defendant, the plaintiff has failed to abstract all of the instructions. By failing to abstract all of the instructions, issues relating to the instructions are not properly considered by this court and we express no opinion on their propriety. *Gillespie v. Norfolk & Western Ry. Co.*, 3 Ill. App. 3d 779, 278 N.E.2d 420; *Pantlen v. Gottschalk*, 21 Ill. App. 2d 163, 157 N.E.2d 548.

■■ We conclude the plaintiff was afforded a fair trial and consequently the court did not err in denying his motion for a new trial for this reason.

This brings us then to plaintiff's assignment of error regarding his contention the amount of damages awarded by the jury was insufficient.

Jumer was hospitalized after the accident and the nature and extent of his injuries was described by the physician who treated him after the accident. The physician testified about injured areas on the plaintiff's face which included fractures of the eye-socket bones, a fracture of the nose, impaired sinus function and lacerations. The principal injury sustained by the plaintiff was a broken nose. The eye-socket fractures healed in good alignment without treatment and normal function of the sinuses was resumed. About a year later plaintiff underwent further plastic surgery to his nose, the work being performed by a different physician than the one initially treating plaintiff. This physician also testified in behalf of the plaintiff. From his testimony it may be inferred that he believed the plaintiff's recovery had been complete and that plaintiff had not sustained any permanent impairment of his nose other than that which may result from a completely healed fracture or fully successful operation. According to the testimony of this physician, plaintiff's nose was normal in appearance with a slight scar, and that both the nose and sinuses were functioning normally. Dr. Corey, the physician who initially treated plaintiff was more critical of the results of the nose restoration and believed additional corrective measures would be required. The plaintiff himself appeared satisfied with his appearance. The testimony of the physicians and plaintiff included accounts of pain following the accident and operations.

The medical and hospital expenses incurred and paid were $4,571.89 and these expenses are the only items which would usually be described as "specials." However, during the trial no evidence was presented

concerning the hospital or medical expenses. This appears to have been a tactical election of the plaintiff. As indicated earlier, after the verdict of $5,000 was returned the court without objection by plaintiff credited the medical and hospital expenses advanced by defendant against the judgment.

Thus we have the plaintiff's assertion of inadequate damages arising in the context of the absence of any evidence being presented to the jury of special damages. Yet, the yardstick of special damages has been called to our attention in order to measure the adequacy of the jury's verdict.

■■ Generally the question of damages is peculiarly one of fact for the jury, and courts are reluctant to interfere with the jury's exercise of its discretion. (*Duncan v. Peoria Yellow Checker Cab Corp.*, 45 Ill. App. 3d 653, 359 N.E.2d 1242.) The jury's verdict in determining damages should be approved except where the award is palpably inadequate or it is clear that a proven element of damages has been ignored, or it is shown to be erroneous or the result of passion or prejudice, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by the plaintiff. (*First National Bank v. Szwankowski*, 109 Ill. App. 2d 268, 248 N.E.2d 517.) Such cases as *DeFreezer v. Johnson*, 81 Ill. App. 2d 344, 225 N.E.2d 46, and *Kelly v. Reynolds*, 132 Ill. App. 2d 1098, 271 N.E.2d 370, are not supportive of the plaintiff's position since in those cases evidence of special damages was introduced to the jury, whereas in this case no such evidence was presented. Use of special damages as a gauge for judging the adequacy of the jury's verdict is not particularly helpful when the jury was never informed of those damages.

■■ We believe the jury's verdict was within the range of the testimony and that when the testimony is related to the instructions we are unable to say the jury either ignored the instructions, reached its verdict from passion or prejudice or that the award was a compromise. The major thrust of plaintiff's argument is the failure of the award to reflect damages for the permanency of his injury and his pain. While the nature of the testimony might have supported a larger verdict, the evidence is subject to a wide range of inferences concerning the nature and extent of any permanent consequences of the injuries. Plaintiff could breathe fully and normally; his nose was in good alignment with only minor residual scarring. On the state of the record, we are unable to agree with plaintiff that the verdict of the jury is inadequate.

■■ Plaintiff also complains that during final argument, defendant's counsel referred to a sum of $4,000 for medical expenses which reference plaintiff now complains of because not supported by any evidence. We agree that this statement was not supported by the evidence, but since

plaintiff made no objection at the time and since we do not see how he was prejudiced thereby, we do not believe plaintiff is in a position to complain of the remark.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

BARRY, P. J., and STENGEL, J., concur.